**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**JONNY AU, individually and on behalf of all others similarly situated** — **Plaintiff**

**v.** — **CASE NO. 3:26-CV-000127-TSL-MTP**

**JURY TRIAL DEMANDED**

**MERCEDES-BENZ USA, LLC and MERCEDES-BENZ GROUP AG,** — **Defendants**

# AMENDED CLASS ACTION COMPLAINT

Plaintiff Jonny Au ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Mercedes-Benz USA, LLC ("MBUSA") and Mercedes-Benz Group AG ("MBG")(collectively referred to herein as "Defendants" or "Mercedes"). Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and upon information and belief as to all other matters.

## I. NATURE OF THE ACTION

1. This case concerns manufacturing, materials, design, or a combination thereof, in sunroof and panoramic roof drainage systems in Mercedes-Benz vehicles ("Class Vehicles"), which allows water to intrude into the passenger compartment and pool in the front passenger footwell where sensitive electrical components are located, causing corrosion, short circuits, malfunctions, no-start conditions, and safety risks.

2. Plaintiff's 2017 Mercedes-Benz GLS 450 suffered a no-start and widespread electrical failure after water accumulated in the passenger footwell and battery compartment. Mercedes-Benz of Jackson's service department confirmed active water intrusion associated with the sunroof area and documented extensive corrosion in the front Signal Acquisition Module

(SAM), pre-fuse box, and harness connectors, with the pre-fuse box "submerged." (*See* Exhibit "A" – Mercedes-Benz of Jackson Repair Estimate and Findings).

3. The alleged defect may be present in every Mercedes equipped with a sunroof or panoramic sunroof. The defect may result from part of the manufacturing process, workmanship, or materials used in production, or it may result from a combination of issues.

4. Mercedes knew or should have known of this defect through pre-release testing, field data, dealer communications, and consumer complaints, yet failed to disclose the defect or provide an adequate remedy, and instead routinely attributes the problem to "maintenance" or user error.

5. Mercedes does not acknowledge this defect, or the risk of failure, in its owners' manuals. Mercedes provides no information concerning maintenance or risks of water intrusion caused by its sunroofs.

6. Reasonable consumers, like Plaintiff, expect a vehicle's sunroof to function in a manner free of defect causing water intrusion. Plaintiff and Class Members reasonably expect that Mercedes will not sell or lease vehicles with known defects, such as the defective sunroof, and will disclose any such defects to its consumers when Mercedes learns of them. They did not expect Mercedes to fail to disclose the defect, to actively conceal the defect and to deny its existence.

7. Plaintiff seeks damages, restitution, injunctive relief including an appropriate repair/reimbursement program, and any further relief the Court deems just and proper.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action because it is based, in part, on a federal claim under 15 U.S.C. § 2301, *et. seq*. and supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367.

9. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act, because the aggregated claims of Class Members exceed $5 million, Plaintiff and Defendants are residents of different states, and there are at least one hundred members of the proposed class.

10. Personal jurisdiction is proper because Defendants transact business, markets, advertises, sells, and services the Class Vehicles in Mississippi and within this District, and Plaintiff's claims arise out of or relate to those contacts.

11. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, acts or omissions giving rise to the claims occurred here, including Plaintiff's purchase, warranty service, diagnosis, and consequential harm.

## III. PARTIES

12. Plaintiff Jonny Au is an adult resident citizen of the State of Mississippi, who resides at 103 Cypress Cove NW, Magee, Mississippi 39111 (Simpson County), who purchased and maintained a 2017 Mercedes-Benz GLS 450 (VIN ending in 885203).

13. Defendant Mercedes-Benz USA, LLC is a Delaware limited liability company with its principal place of business in Sandy Springs, Georgia, and may be served with process by service upon its registered agent, The Corporation Company, 410 Peachtree Parkway, Suite 4245, Cumming, GA 30041. MBUSA distributes, markets, and warrants Mercedes-Benz vehicles in the United States, including Mississippi.

14. Defendant Mercedes-Benz Group AG is a foreign corporation headquartered in Stuttgart, Baden-Wurttemberg, Germany. MBG was formerly named Daimler Aktiengesellschaft, DaimlerChrysler, and Daimler-Benz. MBG is engaged in the business of designing, engineering, manufacturing, testing, marketing, supplying, selling, and distributing motor vehicles globally, including Plaintiff's vehicle and the Class Vehicles, in the United States, including in Mississippi.

15. Defendants MBUSA and MBG, (collectively "Mercedes" or "Defendants") through various entities, designs, manufactures, markets, distributes, and sells Mercedes automobiles in locations across North American and globally. Additionally, Defendants developed, reviewed, and approved the marketing and advertising campaigns designed to promote the sale of the Class Vehicles.

16. Mercedes is and was at all relevant times doing business in a continuous manner through a chain of distribution centers and retail dealers throughout the United States, by selling, advertising, promoting and distributing Mercedes-Benz vehicles, including Mississippi, where Plaintiff purchased his vehicle.

17. Through its wholly owned subsidiaries and/or agents, Defendants market their products in a continuous manner in the United States, including in Mississippi where Plaintiff resides and purchased his vehicle.

18. MBG is the parent of, controls, and communicates with MBUSA concerning virtually all aspects of the Class Vehicles distributed and sold within the United States.

19. MBUSA acts as the sole distributor for Mercedes-Benz vehicles in the United States, purchasing those vehicles from MBG in Germany for sale in the United States.

20. The relationship between MBUSA and MBG is governed by a General Distributor Agreement that gives MBG the right to control nearly every aspect of MBUSA's operations, including but not limited to, sales, marketing, management, policies, corporate governance policies, pricing, and warranty terms.

21. MBG owns 100% of the shares of MBUSA and at all relevant times, MBUSA has been and has acted as an agent of MBG and was subject to MBG's control.

## IV. FACTUAL BACKGROUND

### A. The Defect

22. The Class Vehicles' sunroof drainage system, including drains, tubes, grommets, elbows, cowl exits, and related seals, lacks sufficient capacity and robustness and/or is prone to misrouting, loosening, blockage, or separation during ordinary use, allowing water to enter the sunroof area and migrate to the front passenger footwell and battery compartment.

23. Sunroofs are not items subject to wear and tear in the automotive industry and are reasonably expected to last the entire life of the vehicle.

24. When water reaches floorboard electrical control units, it causes corrosion and short-circuits, leading to malfunctions and expensive repairs.

### B. Mercedes' Knowledge of the Defect

25. Mercedes, like all automakers, monitors its own warranty trends and industry information concerning emerging problems with vehicles and defects. Mercedes knew or should have known or been aware that similar defects in sunroofs resulting in water intrusion have initiated recall or repair campaigns by other vehicle manufacturers.

26. Mercedes, on information and belief, has long been aware of numerous consumer complaints of sunroof water intrusion, but has failed to alert consumers of the defect.

27. Mercedes has exclusive control over any information concerning its design, manufacturing, materials or combination thereof, which forecloses possible investigation.

### C. Plaintiff Au's Experience

28. Plaintiff consistently maintained his GLS 450 at Mercedes-Benz of Jackson, including regular services and multiple multi-point inspections that did not report any water intrusion issues prior to the failure (*See* Exhibit "B" - Service and Maintenance History for Plaintiff's GLS 450).

29. Plaintiff purchased his GLS 450 at Mercedes-Benz of Jackson. Mercedes-Benz is a one hundred year old, global premium automotive brand. Mercedes-Benz vehicles are marketed vehicles as being luxurious, reputable, and reliable.

30. On or about December 5, 2019, while Plaintiff's vehicle was still within the applicable warranty period, Plaintiff experienced water intrusion from the sunroof area after driving through Rainforest Carwash in Magee, Mississippi. Specifically, Plaintiff noticed a water droplet fall and hit his head while inside the vehicle. Plaintiff promptly presented the vehicle to Mercedes-Benz of Jackson, an authorized dealer of Mercedes, for warranty service and reported the sunroof water intrusion issue.

31. Mercedes-Benz of Jackson provided Plaintiff with a temporary replacement vehicle and retained Plaintiff's vehicle for approximately ten days. When Plaintiff returned to retrieve the vehicle, Mercedes-Benz of Jackson advised him that it could not identify the cause of the water intrusion. The service record contains no meaningful detail explaining what testing was performed, whether the dealership attempted to replicate the carwash conditions, whether the sunroof drains, seals, tubes, or related components were inspected, or whether any corrective action was taken. Mercedes-Benz of Jackson did not propose remedial measures or repairs or suggest additional necessary diagnostics to Plaintiff.

32. On or about January 1, 2022, while Plaintiff's vehicle was still within the applicable warranty period, Plaintiff experienced substantially similar water intrusion from the sunroof area after again driving through a carwash. Plaintiff returned the vehicle to Mercedes-Benz of Jackson for service. Plaintiff left the vehicle with the dealership and was driven home by his wife.

33. Days later, Plaintiff spoke with Mercedes-Benz of Jackson service advisor Montez Wonsley, who advised Plaintiff that the dealership could not find anything wrong with the vehicle

and that there was no suspected issue in need of repair. Plaintiff was not instructed to return the vehicle for additional sunroof diagnosis or follow-up testing. To the extent the service history contains a notation suggesting otherwise, Plaintiff contends that such notation was never communicated to him and was contrary to what he was told by the dealership.

34. The dealership's handling of these two warranty-period water intrusion complaints is material because, when Plaintiff later suffered catastrophic electrical failure, Mercedes-Benz of Jackson was able to reproduce the leak by applying water to the top of the vehicle and sunroof area and identified leakage near the front-left sunroof seal. Thus, the same general condition Plaintiff reported during the warranty period was later confirmed only after the vehicle suffered major electrical damage.

35. In April of 2024, Plaintiff's vehicle became inoperative, suffered catastrophic electrical failure, and would not start. Plaintiff's vehicle was towed up to Mercedes Benz of Jackson for inspection and diagnosis.

36. Plaintiff did not receive fast answers, in fact, his vehicle sat at Mercedez Benz of Jackson for months before they provided him with any answer, during this prolonged diagnostic waiting period, Mr. Au lost access to his vehicle and had to obtain other means of transportation.

37. It was not until July 26, 2024, when Mr. Au received a report from Julie King, Service Director for Mercedes-Benz of Jackson, informing him of their findings (*See* Exhibit "A").

38. The dealership service department, in an attempt to diagnose the issue, assumed the problem was battery and proceeded to replace the vehicle's battery.

39. During the battery replacement, the dealer found standing water and significant corrosion in the front passenger footwell and battery compartment. A photograph of the battery is attached as Exhibit "C".

40. Prior to his vehicle failing to start and being placed in Mercedes-Benz of Jackson's service department, Plaintiff had not experienced significant water intrusion into the cabin compartment sufficient to cause the catastrophic damage to the vehicles electrical system. (Ex. C). Plaintiff had no prior warning or reason to discover the faulty sunroof seal and/or drainage system.

41. Following the April 2024 event, the service department at Mercedes Benz of Jackson applied water to the top of the vehicle and sunroof area and reproduced leakage near the front-left sunroof seal.

42. The dealer documented brownish/greenish corrosion in connectors, a submerged pre-fuse box, corrosion at the battery compartment fuse box, and damage to the front SAM and harness connectors. (*See* Exhibit "A").

43. On July 26, 2024, Mercedes-Benz of Jackson provided a repair quote in the amount of $8,363.28 to Plaintiff. (Ex. A). The cost of repair is economically unfeasible and renders the vehicle virtually worthless.

44. The Plaintiff visited the service department on or about September 9, 2024, to inspect the vehicle.

45. The Plaintiff has attached photographs taken of the corroded areas as Exhibit "D".

46. During this visit, management for Mercedes Benz of Jackson admitted that Mercedes had been experiencing similar water intrusion problems with other Mercedes vehicles.

47. Plaintiff has not altered or replaced the original manufacturer sunroof drainage system, including any of the component drains, tubes, grommets, elbows, cowl exits, and related seals.

**D. MBUSA's Knowledge and Failure to Disclose**

48. Defendants had knowledge of water-ingress risks associated with roof and drainage systems and the foreseeability of floorboard electrical damage, yet failed to disclose or warn consumers and continued to market the vehicles as suitable for ordinary use in rain and car washes.

49. When Plaintiff inspected the vehicle at Mercedes-Benz of Jackson on or about September 9, 2024, Service Director Julie King admitted that Mercedes had seen and serviced multiple Mercedes vehicles with the same or substantially similar water-intrusion problem.

**E. Class Vehicles**

50. The Mercedes-Benz automobile models that make up the Class Vehicles in this case are the model-year 2017 to present C-Class, CLA-Class, CLE and E-Class Coupes, GLA, GLB, GLC (including Coupe variants), GLE (including Coupe variants), GLS, G-Class, EQE SUV, and EQS SUV models equipped with factory-installed sunroof or panoramic roof systems.

**F. Consumer Complaints and Online Reports**

51. Numerous online owner reports mirror Plaintiff's experience. Internet blogs, forums, and auto-owner communities are replete with accounts of similar water intrusion, leaking, and corrosion issues with Mercedes-Benz vehicles.

52. For instance, user "esee" on the forum MBWorld.org shared its experience with its Mercedes E-Class vehicle, noting that the leak was coming from the sunroof and that it was noticeable after washing the vehicle. User "esee" also noted its opinion that the issue comes from a faulty drain hose:



E-Class (W213) 2016 - 2023

**Leaky sunroof drain issue**

Reply Subscribe

Thread Tools Search this Thread Rate Thread

Oct 16, 2024 | 02:11 PM Share #1

e

esee

THREAD STARTER

Newbie

Joined: Nov 2023
Posts: 9
Likes: 6
e300

**Leaky sunroof drain issue**

Hi, I have a leak in my car and took me quite a while to realize that the leak is coming from the sunroof. I notice the leak mostly after I get a car wash when the water drips on my legs. The A-pillar gets wet, and sometimes water drips out of the sun glass holder, or the rear-view mirror.

After doing some research I learned this leak comes from the faulty drain hose. From my understanding, the cause can either be a clogged or disconnected drain hose. Most cases appear to be clogged drain hoses.

I am looking for a simple solution which I can accomplished with the least amount of work. For now, I am putting microfiber towels into the sun roofs drain pan every time I go for a carwash. The microfiber towel is a temporary solution that mostly works. Most people take off the front wheel in order to access the clogged part of the drain hose, yet I don't have a garage and cannot take off my wheel. I saw someone solve this issue by blowing compressed air into the drain hose from the sun roof drain hole, yet the sunroofs wind protector blocks my access to the drain hole and I am wondering how to remove the sunroofs wind protector.

I prefer not to have to take down the whole headliner in order to diagnose the problem, and I was wondering if people have an easy way to diagnose and solve this leaky sunroof issue. Thank you.

0 Reply

53. In the same forum, MBWorld.org, user "linjon11" posted about the passenger floor of his 2019 Mercedes E 450 being flooded and noted, "tech says it's known issue":


E-Class (W213) 2016 - 2023

Passenger floor, e 450 flooded, tech says it's known issue

Reply Subscribe

Thread Tools Search this Thread Rate Thread

Sep 21, 2021 | 11:13 PM Share #1

linjon11
THREAD STARTER
Newbie
Joined: Aug 2021
Posts: 11
Likes: 4
2019 e 450

Passenger floor, e 450 flooded, tech says it's known issue

So I put a post earlier about my driver cluster going bad, thinking it's a fuse, or a chip. Turns out I had "buckets of water" under the passenger side floor, which shorted some cables.
Tech at dealer said there is a drain problem with this car, so water drains in, not out
something to be aware of

4 Reply

54. In a November 14, 2025, Facebook post in the group "Smart #1 Car Club," user Neil Wells noted that the electronics in his vehicle were exposed to water due to the leak:


Smart #1 Car Club · Join
Neil Wells · November 14 ·

Folks who had a windshield/roof water leak, did you get the electronic components that got wet replaced? Mercedes are claiming that they work and don't need to be fixed, but surely that amount of water damage will shorten their lifespan

55. In a video posted to TikTok, user "royaltyautoservice" demonstrated how the drain lines in the Mercedes vehicles clog and cause water to not properly drain and enter into the inside of the vehicle (https://www.tiktok.com/@royaltyautoservice/video/7518188082194107679):




56. Multiple forums and websites reflect Mercedes drivers reporting the same or similar issues. This issue is causing extensive damage. Mercedes knew or should have known of the pervasive issues with its sunroof but have utterly failed to address the underlying defect or provide recourse to its owners.

57. Despite these complaints and the hazards presented by the defect, Mercedes continues to conceal its existence from consumers. Mercedes has a duty to alert consumers of the existence of the defect. Mercedes has instead intentionally concealed the defect and failed to warn consumers. Mercedes has concealed the defect knowing that the defect is not reasonably discoverable by consumers unless or until they experience a failure.

## V. CLASS ALLEGATIONS

58. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a Nationwide Class defined as: All persons or entities in the United States who purchased or

leased a Mercedes vehicle equipped with a factory-installed sunroof or panoramic roof and who experienced interior water intrusion resulting in corrosion or electrical damage.

59. Excluded from the Class are Defendants and their officers and directors; judicial officers assigned to this case and their staff; and persons who purchased Class Vehicles for resale only.

60. The Class is so numerous that joinder is impracticable. Defendants manufactured and sold and leased tens of thousands of Class Vehicles nationwide.

61. Common questions of law and fact predominate over any questions affecting only individual members, including: whether the drainage systems are defective; whether Mercedes knew and failed to disclose said defect; whether Mercedes breached warranties; and the appropriate damages and equitable relief.

62. Plaintiff's claims are typical because they arise from the same defect and conduct and rely on the same legal theories as those of the Class.

63. Plaintiff and undersigned counsel will fairly and adequately protect the interests of the Class.

64. A class action is superior to individual litigation, and management of the Class is feasible given the common defect, common proof, and common relief requested.

65. Plaintiff and Class Members' claims accrued upon discovery that the sunroofs in their Class Vehicles were prone to leaking. While Mercedes arguably knew and has concealed the defect, Plaintiff and Class members could not and did not discover this fact through reasonable diligence.

66. Any statutes of limitations are tolled by Defendants' knowing and active concealment of the fact that the defects affected the class vehicles.

67. Defendants have under a continuous duty to disclose the Plaintiff and Class members the true character, quality and nature of the sunroofs installed in the Class Vehicles. At all times, Mercedes knowingly and actively concealed the true character, quality and nature of the sunroofs installed in the class vehicles. Plaintiff and Class Members were misled by Defendants' concealment. Therefore, Defendants are estopped from relying on any statutes of limitation in defense of this action.

68. MBUSA kept the defect from consumers by omitting and obscuring material information about the sunroof drainage system while continuing to manufacture, distribute, sell, lease, and service Class Vehicles. The details of MBUSA's concealment are uniquely known to MBUSA, to the exclusion of Plaintiff and Class Members. After discovering the truth, Plaintiff exercised due diligence by investigating the cause, demanding records, retaining counsel, and pursuing these claims. MBUSA's fraudulent concealment warrants tolling of all statutes of limitation pursuant to governing statutory or common law and, in the alternative, tolling under general equitable doctrines.

## VI. CAUSES OF ACTION

### Count I – Breach of Implied Warranty of Merchantability (UCC 2-314) On Behalf of a National Class or in the alternative on behalf of a Mississippi class

69. Mercedes, as a merchant of these vehicles, impliedly warranted that the Class Vehicles were of merchantable quality and fit for their ordinary purposes. That promise included that the vehicles were properly made and that, with the sunroofs closed, water would not intrude into the interior or saturate floorboard electronics during ordinary use (e.g., rain, inclement weather, car washes).

70. Mercedes breached the implied warranty because the Class Vehicles:

a. Were not merchantable - the sunroof drainage systems allowed water ingress;

b. Were not of even and acceptable quality: design and manufacturing issues in the drainage path (blockage, disconnection, insufficient capacity) permitted leaks; and

c. Were not fit for ordinary driving conditions, resulting in soaked footwells, corrosion, electrical failures, and no-start conditions.

71. Plaintiff and Class Members had sufficient direct dealings with Mercedes authorized dealers and service centers to establish privity, including by way of purchase/lease transactions, warranty service, and representations made at the point of sale.

72. In the alternative, privity is not required because Plaintiff and Class Members are intended third-party beneficiaries of Mercedes sales to its dealers and of Mercedes' implied warranties running with those vehicles.

73. Mercedes' dealers were not the ultimate consumers and have no independent rights under these warranties; the warranties were intended to benefit vehicle purchasers and lessees.

74. Plaintiff and Class Members complied with all material obligations or are excused by MBUSA's conduct.

75. As a direct and proximate result of the breach, Plaintiff and Class Members overpaid, did not receive the benefit of their bargain, suffered diminished value, and incurred out-of-pocket costs for diagnosis, repairs, moisture remediation, and replacement of damaged components. They seek all available damages and equitable relief.

**Count II – Breach of Express Warranty (UCC 2-313) on behalf of a national class or in the alternative (Miss. Code Ann. § 75-2-313)**
**On Behalf of a Mississippi Class (Against MBUSA only)**

76. MBUSA provided Plaintiff and Class Members with express warranties, including written new-vehicle warranties and affirmations in advertising, brochures, websites, and point-of-sale materials, that became part of the basis of the bargain.

77. MBUSA designed, manufactured, distributed, and warranted Class Vehicles equipped with sunroof/panoramic roof drainage systems. Defects in those systems (including blockage/disconnection/insufficient capacity) required repair or replacement during the warranty period and should have been covered by MBUSA's express warranties.

78. MBUSA breached its express warranties by selling and leasing Class Vehicles with the sunroof-drainage defect and by refusing or failing to repair, replace, or otherwise remedy the defect within the warranty period, or by performing ineffective repairs that left the defect unresolved.

79. Although MBUSA warranted it would correct defects in materials and workmanship, MBUSA either (a) denied coverage by mischaracterizing water-ingress as maintenance/customer fault, or (b) replaced parts with like defective parts or failed to address the drainage defect's root cause. In either event, MBUSA did not conform the vehicles to the express warranties.

80. Plaintiff and Class Members provided notice of the nonconformity within a reasonable time or notice would have been futile because MBUSA already knew of the defect yet failed to honor its warranty obligations.

81. To the extent any time or mileage limitations or repair-only limitations are asserted by MBUSA, those limitations fail of their essential purpose and/or are unconscionable in light of MBUSA's knowledge and the latent nature of the defect.

82. Plaintiff and Class Members performed all conditions precedent or are excused from performance by MBUSA's breaches and concealment.

83. As a direct and proximate result of MBUSA's breaches, Plaintiff and Class Members overpaid for their vehicles, did not receive the benefit of their bargain, suffered

diminished value, and incurred out-of-pocket costs (diagnosis, repair attempts, moisture remediation, replacement of damaged electrical components).

84. Plaintiff and Class Members seek legal and equitable relief, including damages, consequential and incidental damages, specific performance or replacement/repair conforming to warranty, restitution/disgorgement, attorneys' fees and costs where permitted, and such further relief as the Court deems just and proper.

**Count III – Fraudulent Concealment**
**On Behalf of Plaintiff and the Class**

85. MBUSA knew or, at minimum, should have known of the sunroof/panoramic roof drainage defect and its foreseeable safety and economic consequences, based on pre-release testing, field/dealer data, consumer complaints, and internal analyses unavailable to consumers.

86. MBUSA had a duty to disclose these material facts because: (a) it possessed exclusive and superior knowledge of a latent defect not apparent to reasonable consumers; (b) it made partial representations (e.g., marketing, owner's materials, and service communications implying normal water management and vehicle suitability for ordinary weather and car-wash use) that were misleading absent full disclosure; and/or (c) it undertook affirmative acts that concealed the defect's nature and scope.

87. MBUSA's affirmative concealment included characterizing sunroof-drain failures as "maintenance/customer fault" rather than a design issue; performing ineffective or cosmetic repairs that failed to address root-cause drainage capacity and/or attachment problems; and channeling defect information to dealers while omitting it from consumer-facing materials, with each act tending to prevent discovery of the defect by Plaintiff and the Class.

88. The omitted facts were material because a reasonable purchaser would view the risk of water intrusion and electrical failures as important in deciding whether to buy, the price to pay, or whether to seek repairs or avoid the product altogether.

89. MBUSA acted with knowledge (or reckless disregard) that withholding and obscuring the defect and its consequences would mislead consumers and induce purchases of Class Vehicles and continued paid service outside warranty.

90. Plaintiff and Class Members reasonably relied on MBUSA's omissions and partial representations, including the absence of defect disclosures and the presentation of the vehicles as fit for ordinary use—because MBUSA was in a superior position to know of the latent defect and consumers could not readily detect it before failure.

91. Had MBUSA disclosed the defect and its electrical and safety implications, Plaintiff and Class Members would not have purchased the vehicles, would have paid less, or would have taken earlier remedial action.

92. MBUSA's fraudulent concealment and omissions directly and proximately caused Plaintiff and the Class to suffer damages, including overpayment, loss of benefit of the bargain, diminished value, out-of-pocket expenses for diagnosis, repairs, and moisture remediation, and related consequential losses.

93. MBUSA has failed to issue any safety bulletins, technical bulletins, or safety recalls to its owners, including Plaintiff. MBUSA has failed to take corrective action and provide owners with alternative remedies.

**Count IV – Mississippi Products Liability Act (Miss. Code Ann. § 11-1-63)**
**Design Defect / Failure to Warn – On Behalf of Plaintiff and Mississippi Class**

94. The Class Vehicles and their sunroof and panoramic roof drainage systems were defective when they left Defendants' control and, as sold, were unreasonably dangerous to

ordinary users because they allowed water to enter the passenger compartment and reach floorboard electrical components, creating corrosion, short circuit, malfunction, and no start risks.

95. Defendants knew or should have known of the danger that caused Plaintiff's and the Class's damages. The drainage system failed to function as an ordinary consumer would expect in normal rain and car wash conditions with the roof closed. Feasible alternative designs existed that, to a reasonable probability, would have prevented or significantly reduced the harm without impairing utility.

96. Defendants knew or should have known that ordinary users would not recognize the latent drainage failure and the resulting risk to floorboard electronics. Defendants failed to provide adequate warnings or instructions, including inspection and maintenance intervals, symptoms of drain restriction or disconnection, and immediate steps to prevent electrical damage, which rendered the product unreasonably dangerous.

97. The defects and inadequate warnings existed when the vehicles left Defendants' control and were a substantial factor and the proximate cause of Plaintiff's and Class Members' damages, including electrical failures, no start conditions, diminished value, and out of pocket repair and remediation costs.

98. Defendants are liable as manufacturer and distributors of Mercedes vehicles. To the extent any seller defenses are implicated, the innocent seller provisions do not shield a manufacturer and, in any event, do not apply here.

99. Plaintiff and the Class seek all remedies permitted by the Mississippi Products Liability Act, including compensatory damages, consequential and incidental damages, costs, and any equitable relief necessary to remedy and prevent further harm.

**Count V – Unjust Enrichment**
**On Behalf of Plaintiff and the Class**

100. Defendants received and retained benefits at Plaintiff's and the Class's expense, including the purchase price and price premiums for vehicles equipped with sunroofs, revenue from parts and service related to water intrusion and electrical damage, and avoided costs that would have accompanied a proper disclosure and repair program.

101. Plaintiff and Class Members conferred those benefits by purchasing or leasing the vehicles, paying for diagnosis and attempted repairs, and bearing out-of-pocket remediation costs that Defendants should have borne.

102. Defendants appreciated and accepted those benefits while representing the vehicles as suitable for ordinary use and while withholding material information about the drainage defect and its foreseeable electrical consequences.

103. Defendants' retention of these benefits is unjust because the vehicles were sold with a latent defect that was known or knowable to MBUSA and that shifted the cost of the defect to consumers.

104. Equity and good conscience require restitution and disgorgement of the benefits wrongfully retained, including restitution of money paid and the reasonable value of benefits conferred.

105. This claim is pled in the alternative to legal remedies. To the extent any contract or warranty remedy is found unavailable or inadequate, or where no direct contract governs the enrichment at issue, restitution is appropriate to prevent unjust retention of the benefits.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment against Defendant as follows:

a) Certification of the Class; appointment of Plaintiff as Class Representative and his counsel as Class Counsel;

b) Damages, restitution, and disgorgement in an amount to be proven at trial;

c) An order requiring Defendants to implement an adequate repair and reimbursement program (including upgraded drainage components, moisture diagnostics, and replacement of affected electrical components);

d) Punitive damages where permitted by law;

e) Pre- and post-judgment interest;

f) Attorneys' fees and costs; and

g) Such other and further relief as the Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this the 24th day of February 2026.

By: /s/ *Ned A. Nelson*
Mark A. Nelson (MSB #3808)
Ned A. Nelson (MSB #105712)
Nelson Law PLLC
7 Woodstone Plaza Ste. 7
Hattiesburg, MS 39402
Telephone: 601-602-6031
Fax: 601-602-3251
mark@nelsonfirm.law
ned@nelsonfirm.law

David McMullan, Jr. (MSB #8494)
John W. ("Don") Barrett (MSB #2063)
BARRETT LAW GROUP, P.A.
404 Court Square
Lexington, Mississippi 39095
Telephone: (662) 834-2488
Fax: (662) 834-2628
dmcmullan@barrettlawgroup.com

dbarrett@barrettlawgroup.com

J. Marc McMillian
McMillian Law, PLLC
114 Choctaw St. W
P.O. Box 337
Magee, MS 39111
Telephone: 601-340-6073
Fax: 601-340-6971
marc@mcmlaw.legal

***Counsel for Plaintiff***

## EXHIBIT LIST

**Exhibit “A”** - Mercedes-Benz of Jackson Repair Estimate and Findings

**Exhibit "B”** - Service and Maintenance History for Plaintiff’s GLS 450

**Exhibit “C”** - Photograph of Corroded Battery

**Exhibit “D”** - Photographs of Corroded Areas in Vehicle